**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MOHINDER DHILLON, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:08-0688 |
| | § | |
| JOHN E. POTTER, Postmaster General | § | |
| of the United States Postal Service, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case alleging employment discrimination and related claims, Defendant John E. Potter, Postmaster General of the United States Postal Service, has filed a Motion for Summary Judgment [Doc. 21] ("Motion"). Plaintiff Mohinder Dhillon has filed a response and Defendant has replied.[1] The Motion is now ripe for decision. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that Defendant's Motion should be **granted**.

## I.   BACKGROUND

Plaintiff Mohinder Dhillon describes herself as follows: her race is "Asian Indian"; her national origin is Indian; her skin color is brown; her gender is female;

---

[1]     Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment [Doc. # 27] ("Response"); Reply in Support of Defendant's Motion for Summary Judgment [Doc. # 30] ("Reply").

her religion is Sikh; her date of birth is December 15, 1941.[2]  At times relevant to this suit, Plaintiff was employed by the United States Postal Service as a "city carrier" at the Fairbanks-North Houston Post Office.[3]  Her supervisors were Milton Helaire and Yolanda Pipkin.[4]  She began working for the Postal Service in 1982.

Dhillon alleges that she was subjected to discrimination and harassment based on her race, national origin, color, religion, and gender.  She further alleges that Defendant retaliated against her when she complained to the Equal Employment Opportunity Commission ("EEOC").  In particular, the incidents about which Dhillon complains are as follows:

Dhillon alleges that she, unlike a co-worker named Mike Johnson, was not permitted to work overtime.  Johnson was a city carrier at the Fairbanks station; Plaintiff identifies him as Caucasian, Baptist, "American/Irish/Indian," and born on January 23, 1962.[5]  Dhillon states that Johnson was permitted to work overtime even though he had not followed procedure by being placed on the "overtime desired" list,

---

[2]     Affidavit of Plaintiff (Mohinder Dhillon) in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Exhibit C to Response) ("Dhillon Affidavit"), at 1, ¶ 2.

[3]     *Id*. ¶ 3.

[4]     *Id*. at 2, ¶ 5.

[5]     *Id*. ¶ 6.

whereas she was on the list but did not get to work any overtime.[6]  She alleges in her affidavit that the denial occurred "all the time" and "on a daily basis," although she gives no specific dates for the alleged problem and provides no documentation.[7]  She also states that she had more seniority than Johnson,[8] and that her route was "over-standard" because it was a twelve-hour route that she was expected to complete in eight hours.[9]  Dhillon alleges that on February 21, 2004, when she asked Milton Helaire, her supervisor, about the discrepancy, Johnson spoke to her rudely and threatened her, telling her not to speak about him and to stay out of his business.  She also alleges that Johnson told her "not to talk to him, not to file an EEO [complaint] and not to name him in an EEO complaint," and that he watched her closely "to see if [Dhillon] would do something wrong that he could report."[10]  Dhillon states that,

---

[6]     *Id.*; *id.* at 4, ¶ 14.

[7]     *Id.* (Johnson was assigned overtime "on [Dhillon's] days off when [Dhillon] could have worked overtime when [Johnson] was not on the overtime desired list. . . . [Helaire] gave [Johnson] overtime all the time, but not [Dhillon]"); *id.* at 6, ¶ 22 ("My supervisors and managers on a daily basis disapproved my overtime").

[8]     *Id.* at 4, ¶ 14.

[9]     *Id.* at 6, ¶ 22.  Dhillon cites no evidence to support her opinion that the route she was asked to do required "twelve hour[s]" of work, nor that she was compensated for eight hours.

[10]    *Id.* at 2, ¶¶ 6-7.

when she reported this behavior to "her supervisor" (presumably, Helaire), nothing was done.[11]

In a separate incident, "[d]uring the period of this EEO complaint," Dhillon alleges that Helaire, her supervisor, refused to give her a Form 3996 "overtime form."[12]  She states that the form is used by employees to estimate how much time they need on their route, based on the volume of mail, the volume of parcels, and the number of certified and registered letters.  Based on what the employee enters on the form, the supervisor approves or disapproves the overtime.  Dhillon alleges that after Helaire refused to give her a Form 3996 she then requested a Form 13 to file a grievance, but that Helaire also refused her that form.  She states that he spoke to her "in a loud voice in front of [her] co-workers," told her that he didn't care if she filed a grievance, and that she would not win.[13]

Regarding Helaire, Dhillon further alleges that he listened carefully to male employees and did not speak to them in a loud voice, and that "[i]f any other employee asks him for a form, he gives it to them politely."[14]  She states that Helaire

---

[11]     *Id*. ¶ 7.

[12]     *Id*. at 3, ¶ 9.

[13]     *Id*.

[14]     *Id*. at 4, ¶ 14.

discriminated against her because "one time" he "mentioned [her] long hair," which Dhillon considered inappropriate because her Sikh religion teaches that it is wrong to cut her hair.[15]  Helaire also allegedly refused to act when Dhillon complained to him about other employees "sometimes" calling her "an old Indian woman."[16]  Dhillon states without any detail or corroboration that her co-workers joked and commented daily about "[her] nationality and [her] religion."[17]  She states that she complained to Helaire "many times" but "he did not pay attention" and "did not care."[18]

On September 8, 2006, management sent an inspector to accompany Dhillon on her route.  Dhillon claims that although "[t]he procedure is that they give you notice ahead of time," she received no notice.[19]  The man, whose last name was Morris, rode in Dhillon's truck with her.  Dhillon states that she then received a warning about Morris from her union steward:

> When Bill Frias, my Union Steward, found out that Morris was with me, he called to let me know that management was not supposed to let him go with a female, because he had a restriction put on him not to be able

---

[15]    *Id*. ¶ 15.

[16]    *Id*.

[17]    *Id*.

[18]    *Id*.

[19]    *Id*. at 5, ¶ 18.

to go with female employees, because he was found to be a sexual harasser.[20]

The information about Morris made Dhillon very upset, and she left her route and returned to the station with Morris.   Back at the station, she was still "fearful and emotionally distraught" and "shaking and crying."[21]   After an hour and a half in the office, she was sent out to finish her route.   The next day, she received a letter of warning "because of unauthorized time" and was given a seven-day suspension.[22] However, Plaintiff's affidavit appears to state that, after she filed a grievance, the suspension was reversed.[23]   At deposition, Dhillon testified that she never served the suspension and the warning letter was removed from her personnel file.[24]

Dhillon further alleges that a meeting with her EEO representative to file a hostile work environment claim, which she requested on September 8, 2006, was

---

[20]     *Id.*

[21]     *Id.* at 6, ¶ 19.

[22]     *Id.*

[23]     Plaintiff states, "I filed an EEO and a grievance and the Letter of Warning was supposed to be removed from my file, but it never was removed, and they voted to removed [sic] the 7-day suspension also."  *Id.*  Her affidavit does not explain who voted to remove the suspension.

[24]     Deposition of Mohinder Dhillon (Exhibit 1 to Motion), at 65-68.

delayed until October 25, 2006.[25] She states that the delay was done "purposely . . . in order to make her claim untimely."[26] She does not specify who was responsible for the delay.

Plaintiff also complains of multiple incidents in the workplace that subjected her to a retaliatory hostile work environment.[27] She states that many of the complaints detailed above contributed to the hostile environment, in particular, the loud reprimands from Helaire;[28] Helaire's refusal to give her the overtime form when requested;[29] the threats from Johnson on February 21, 2004, regarding using his name or filing an EEO complaint; having an alleged "known sexual harasser" sent to inspect her route on September 8, 2006;  receiving a seven-day suspension;[30] having her overtime request disapproved "on a daily basis" when she was expected to complete

---

[25]    Dhillon Affidavit, at 6, ¶ 23; Response, at 6.

[26]    Response, at 6.

[27]    *Id.* at 3-6.

[28]    Plaintiff's affidavit is not clear as to the frequency of the alleged loud reprimands. She discusses one incident, without specifying a date, when she requested overtime and grievance forms, when Helaire allegedly spoke to her in a loud voice and told her he did not care if she filed a grievance and that she would not win.  Dhillon Affidavit, at 3, ¶ 9.  Elsewhere in the affidavit she states, "Milton Helaire does not speak to male employees in a loud voice as he does to me."  *Id.* at 4, ¶ 14.

[29]    This allegation appears to involve a single incident.  *Id.* at 3, ¶ 9.

[30]    As stated above, Dhillon testified at deposition that she did not serve this suspension.

a purported twelve-hour route in eight hours; and the delay from September 8 through

October 25, 2006, in her meeting with her EEO representative.  She additionally

complains of the following:

- Mike Johnson, along with Bill Newman and Andy Anderson, told Dhillon that the three of them were friends and "mentioned KK," which Dhillon states was a reference to the Ku Klux Klan.  Dhillon interpreted the reference as a threat, and states that it was made "so many times," but was only directed at her.[31]

- Helaire, Pam Barrett, and Yolanda Pipkin, all of whom Dhillon identifies as her supervisors, followed her "a lot" on her mail route.[32]  They only followed a carrier when they wanted to give her "a hard time."[33]  Dhillon was embarrassed because her customers knew that management was following her.[34]

- On an unspecified date, Pipkin and Barrett waited for Dhillon in a parking lot where Dhillon had an authorized lunch break.  Dhillon states that one of the women ordered Dhillon to open her lunch cooler, and then put her hand inside it.  Afterwards, Dhillon had a nosebleed that lasted more than one day and for which she was transported to the hospital by ambulance.[35]

---

[31]     Response, at 4; Dhillon Affidavit, at 2-3, ¶ 8.

[32]     *Id.* at 6, ¶ 20.  *See* Response, at 5.

[33]     Dhillon Affidavit, at 6, ¶ 20.

[34]     *Id.* ¶ 21.

[35]     Dhillon Affidavit, at 5, ¶ 17.

Dhillon states that, as a result of the treatment she received, she has suffered from sleeplessness, nervousness, anxiety, nausea, stomach problems, and headaches.[36] She also states that she has had four or five heavy nose bleeds, more than one of which required transport by ambulance to the hospital.[37]   She alleges depression, problems with thinking and focusing, and interference with eating, walking, and other life activities.[38]

Dhillon has filed "over 30 EEO complaints" while employed by the Postal Service, and states that her supervisors were aware of the complaints.[39] Two of Dhillon's EEOC complaints are relevant to this case.[40]   In the first, EEOC No. 460-2006-00111X, Plaintiff complained regarding Helaire speaking to her in a loud voice and Johnson's alleged threats regarding her EEO complaints.  The agency denied Plaintiff's claim on the merits and issued a Final Action on November 28, 2007.[41]   In

---

[36]     *Id*. at 3, ¶ 10.

[37]     *Id*.; *id*. at 5, ¶ 17; Response, at 4.

[38]     Dhillon Affidavit, at 3, ¶ 11.

[39]     *Id*. at 4, ¶ 13.

[40]     Complaint, at 3; Motion, at 2-5.

[41]     Administrative Judge's Decision, *Dhillon v. Potter*, EEOC No. 460-2006-00111X, dated Nov. 19, 2007 (Exhibit 7 to Motion) (holding that (1) Dhillon had failed to establish a *prima facie* case of discrimination based on race, color, religion, sex, national origin, or age and (2) Dhillon had established a *prima facie* case of (continued...)

the second EEOC complaint, No. 460-2007-00191X, Plaintiff complained regarding the events surrounding the incident in which an alleged sexual harasser accompanied her on her route, and of delay in meeting with her EEO representative.  The agency denied this claim on the merits on March 18, 2008.[42]

Dhillon filed this lawsuit on March 3, 2008.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[43]   Summary

---

[41]      (...continued)
retaliation, but the agency had articulated a legitimate, nondiscriminatory reason for the challenged action and Dhillon had failed to provide any evidence of pretext); Notice of Final Action, *Dhillon v. Potter*, EEOC No. 460-2006-00111X, dated Nov. 28, 2007 (Exhibit 8 to Motion) (implementing decision of Administrative Judge).

[42]      Final Agency Decision, *Dhillon v. Potter*, EEOC No. 460-2007-00191X, dated Mar. 18, 2008 (Exhibit 13 to Motion) (holding that (1) Dhillon failed to establish a *prima facie* case of discrimination based on race, color, religion, national origin, sex, and age; (2) Dhillon failed to establish a *prima facie* case of unlawful retaliation; (3) Dhillon failed to establish a claim for disability discrimination under the Rehabilitation Act; and (4) Dhillon failed to establish a *prima facie* case of hostile work environment harassment).

[43]      *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[44]

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."[45]  The moving party, however, need not negate the elements of the non-movant's case.[46]  The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."[47]

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.[48]  "An issue is material if its resolution could affect the outcome of the

---

[44]  FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[45]  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

[46]  *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[47]  *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal citations and quotations omitted).

[48]  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[49]

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.[50]  However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'"[51]  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.[52]  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.[53]  Instead, "the nonmoving party must set forth specific facts showing the existence of a genuine issue

---

[49]    *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

[50]    *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

[51]    *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

[52]    *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002), *overruled on other grounds*, *Grand Isle Shipyards, Inc., v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009).

[53]    *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

concerning every essential component of its case."[54]  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.[55]

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.[56]   A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.[57]

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[58]

---

[54]   *Continental Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 555 F.3d 399, 405 (5th Cir. 2009); *see Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003).

[55]   *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

[56]   *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

[57]   *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009) (citing *Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 98 (5th Cir.1993)); *In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

[58]   *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotations omitted).

## III.   ANALYSIS

Plaintiff Dhillon brings claims under Title VII for discrimination, hostile work environment, and retaliation.   Dhillon has abandoned her claim under the Rehabilitation Act of 1973.[59]

### A.   Title VII Discrimination

Dhillon alleges that Defendant discriminated against her based on her race, national origin, religion, and gender, in violation of Title VII.  Under the burden-shifting standard applicable to Title VII claims, a plaintiff claiming discrimination must establish a *prima facie* case by demonstrating that he or she: (1) is a member of a protected class; (2) was qualified for the position in question; (3) was the subject of an adverse employment action; and (4) was treated less favorably than similarly situated persons who were not members of the protected class.[60]  A plaintiff's *prima facie* case creates an inference of intentional discrimination that shifts the burden back to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse

---

[59]   Plaintiff's Response, at 2.  Moreover, although Dhillon alleged age discrimination in some of her administrative proceedings, her complaint before this Court does not allege age discrimination.  Complaint [Doc. # 1].

[60]   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (race); *Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 F. App'x 917, 921 (5th Cir. 2009) (gender);  *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (race).

employment action.[61]  The defendant's burden at this stage is a burden of production, not persuasion, and "'can involve no credibility assessment.'"[62]

If the employer provides such a reason, the burden then shifts back to the plaintiff to offer evidence to demonstrate a genuine issue of material fact that "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)."[63]  Under the "motivating factor" analysis, if the plaintiff demonstrates that the protected characteristic was a motivating factor in the employment decision, the employer must then prove "that the same adverse employment decision would have been made regardless of discriminatory animus" in order to avoid liability.[64]  Despite this intermediate burden shifting, the

---

[61]   *McDonnell Douglas*, 411 U.S. at 802;  *Lee*, 574 F.3d at 259.

[62]   *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)).

[63]   *Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004) (internal quotation marks and citation omitted).

[64]   *Id.* at 313 (internal quotation marks and citation omitted)

plaintiff bears the ultimate burden of proof to demonstrate that the defendant intentionally discriminated.[65]

The first two elements of Dhillon's *prima facie* case are not in dispute. She is a member of several protected classes (female; self-described as being of "Asian Indian" race and of Indian origin; Sikh religion). The Court assumes that she was qualified for the position she held as a letter carrier.

The third element of the *prima facie* case requires Dhillon to show that she was subject to an "adverse employment action." For Title VII discrimination claims, adverse employment actions "'include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'"[66] Dhillon's briefing identifies the following incidents as the basis for her discrimination claims:

> Gender: Plaintiff alleges that Helaire discriminated against her based on her gender when he permitted Mike Johnson, a Caucasian male, to work overtime despite the fact that Johnson was not on the "overtime desired" list.[67] Plaintiff also alleges that Helaire did not listen as carefully to female employees as he

---

[65] *Reeves*, 530 U.S. at 143; *Lee*, 574 F.3d at 259 n. 13 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

[66] *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (quoting *Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)) (alteration in *McCoy*).

[67] Response, at 7.

did to male employees and that he refused to act when others called Dhillon "an old Indian woman."[68]

<u>Religion</u>: Plaintiff alleges that Helaire had "distinct and full knowledge . . . that Plaintiff was a practicing Sikh" and the only Sikh in the workplace, making her "an easy target for management and for other employees who were encouraged by management to harass Plaintiff."[69] Helaire also once "mentioned" Dhillon's long hair, which Dhillon states is required by her faith.[70] Dhillon states that her co-workers made jokes and comments daily about her religion.

<u>Race/National Origin</u>: Plaintiff does not identify specific incidents relevant to her claims of race and national origin discrimination. Some of the incidents listed above as alleged gender discrimination could also pertain to race and national origin, in particular, the alleged slur of "old Indian woman." She states that co-workers made daily jokes and comments about her nationality, although she gives no detail about these alleged comments. Dhillon also alleges that Johnson, along with two other employees, "mentioned KK" in comments directed to her, which Dhillon interpreted as a threatening reference to the Ku Klux Klan.[71]

With the possible exception of Dhillon's claim regarding overtime, all of the actions alleged above (in particular, Helaire's failure to listen to women as well as to men, Helaire's refusal to act when others called Dhillon an "old Indian woman," jokes and comments by her co-workers, Helaire's mention of Dhillon's long hair, and her co-workers' reference to "KK") do not fit into the categories of "ultimate employment decisions" outlined by the Fifth Circuit, *i.e.*, hiring, granting leave, discharging,

---

[68]     Dhillon Affidavit, at 4, ¶¶ 14-15.

[69]     Response, at 7.

[70]     Dhillon Affidavit, at 4, ¶ 15.

[71]     *Id*. at 2-3, ¶ 8.

promoting, or compensating.[72]   Therefore, even assuming that Plaintiff could prove each of the above allegations at trial, she still would fail to demonstrate a genuine issue of material fact as the "adverse employment action" element.

As for Dhillon's claim that she was denied the opportunity to work overtime, the Court will assume *arguendo* that such claim could fit in the "compensation" category as an "ultimate employment action."   Dhillon does not explain whether her claim pertains to seeking additional work assignments or more compensation to do the assignments she already had been given.   She fails to allege any specific facts in support of her allegation that she was denied overtime pay.   Dhillon alleges merely the conclusion that she was denied overtime "on a daily basis," but her briefing and affidavit never state specifically, for instance, when she applied for overtime (or was denied overtime request forms), how often she applied and/or requested forms, or the number of overtime hours for which she applied.[73]   She also has failed to submit exhibits that provide evidence addressing any of these matters.   "[A] summary assertion made in an affidavit is simply not enough proof to raise a genuine issue of material fact."[74]   Dhillon accordingly has failed to present evidence sufficient to defeat

---

[72]    *See McCoy*, 492 F.3d at 559

[73]    *See* Dhillon Affidavit, at 2, ¶ 6; *id.* at 4, ¶ 14; *id.* at 6, ¶ 22.

[74]    *First Colony Life Ins.*, 555 F.3d at 181.

summary judgment,[75] and summary judgment is granted for Defendant on Plaintiff's

disparate treatment discrimination claims.

### B.   Hostile Work Environment

Dhillon alleges that she suffered "severe harassment" by supervisors Helaire

and Pipkin.[76]  To prove a hostile work environment claim against a supervisor, a

plaintiff must show (1) that the employee belongs to a protected class; (2) that the

employee was subject to unwelcome harassment; (3) that the harassment was based

on the employee's protected class; and (4) that the harassment affected a "term,

---

[75]   *See Am. Eagle Airlines*, 343 F.3d at 405 (nonmoving party on summary judgment must present "specific facts" that show "the existence of a genuine issue concerning every essential component of its case" (internal citation and quotation marks omitted)).  In addition, the Court questions whether Dhillon has presented evidence sufficient to demonstrate a genuine issue of material fact as to the fourth prong, *i.e.*, that she was treated less favorably than similarly situated persons who were not members of the protected class.  Her overtime claim is alleged only as a claim of gender discrimination, and the comparator upon whom Dhillon relies is co-worker Mike Johnson.  Response, at 7.  Dhillon's brief cites to the testimony of co-worker Debbie Reynolds in one of Dhillon's EEOC proceedings, as support for Dhillon's contention that Johnson was given overtime instead of Dhillon.  Reynolds testified that Helaire was "bringing Mike Johnson out of schedule" and allowed him to come to work at 5:00 a.m., and that although Helaire had other workers "on the list"—presumably the overtime desired list—he "secretly" picked out Johnson and let him work "out of schedule." Transcript of EEOC Proceeding, No. 460-2006-00111X, dated Nov. 1, 2007 (Exhibit B to Response), at 12.  However, Reynolds also testified that, along with Mike Johnson, a female worker named Sarah Johnson also was permitted to start work at 5:00 a.m.  *Id.*  In other words, Plaintiff's only cited evidence for claim that she was denied overtime because she was a woman undercuts Plaintiff's case by identifying another female employee who was permitted to work the desired overtime.

[76]   Response, at 8.

condition, or privilege" of employment.[77]   The fourth element requires that the

harassment "'be sufficiently severe or pervasive so as to alter the conditions of

employment and create an abusive working environment.'"[78]

> To determine whether conduct is severe or pervasive, we will look to the
> totality of the circumstances.  Relevant factors include the frequency of
> the discriminatory conduct; its severity; whether it is physically
> threatening or humiliating, or a mere offensive utterance; and whether it
> unreasonably interferes with an employee's work performance.  Finally,
> the conduct must be both objectively offensive, meaning that a
> reasonable person would find it hostile and abusive, and subjectively
> offensive, meaning that the victim perceived it to be so.[79]

Plaintiff's briefing does not specify which facts are offered to support her

hostile work environment claim.[80]   The Court, however, will consider all allegations

of harassment pertaining to Dhillon's race, national origin, gender, or religion, as set

forth in the Title VII discrimination section above: that Helaire did not listen as

carefully to women as to men; that other co-workers "sometimes" called Dhillon an

"old Indian woman" in the workplace and Helaire did not stop the behavior; that

---

[77]   *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir.  2009); *Lauderdale v. Tex. Dep't of Crim. Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir.  2007).

[78]   *Stewart*, 586 F.3d at 330 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002).

[79]   *Id*.  (internal citations and quotation marks omitted).

[80]   *See* Response, at 8.

unspecified jokes and comments about her nationality and religion occurred daily;[81] that Helaire once mentioned Dhillon's long hair; and that three co-workers directed comments to her that mentioned "KK," or the Ku Klux Klan.

Even if Dhillon were able to prove all of these allegations at trial, under Fifth Circuit authority such evidence is insufficient as a matter of law to show conduct so "severe or pervasive" as to alter the conditions of Dhillon's employment.[82]   In *Hockman v. Westward Communications, LLC*, the Fifth Circuit affirmed summary judgment dismissing a female plaintiff's hostile work environment claim even though she had asserted that the plaintiff's supervisor made a comment regarding the "nice behind and body" of another female employee; brushed against the plaintiff's breasts and behind; once slapped the plaintiff's behind with a newspaper; once attempted to kiss the plaintiff; more than once asked the plaintiff to come to work early "so they could be alone together"; and once stood in the doorway of the women's restroom as the plaintiff was washing her hands.[83]   The Court held that such allegations were not

---

[81]     Dhillon Affidavit, at 4, ¶ 15.  Dhillon does not give examples of these jokes and comments, other than the examples specifically listed in the paragraph above.

[82]     *See Stewart*, 586 F.3d 321; *Donaldson v. CDB, Inc.,* 335 F. App'x 494 (5th Cir. 2009); *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 321-22 (5th Cir. 2004); *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803 (5th Cir. 1996); *Waltman v. Int'l Paper Co*., 875 F.2d 468 (5th Cir. 1989).

[83]     *Hockman*, 407 F.3d at 321-22.

sufficiently severe or pervasive,[84] noting the Supreme Court's statement that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"[85] Dhillon's allegations, which do not rise to the level of those in *Hockman*, are insufficient to demonstrate a genuine issue of material fact that Dhillon was subjected to an "abusive working environment."

Summary judgment is granted for Defendant on Dhillon's hostile work environment claim.

### C.   Title VII Retaliation

Dhillon alleges that Defendant unlawfully retaliated against her after she complained about the discriminatory treatment she received. Title VII forbids an employer to retaliate against an employee who brings a charge of discrimination.[86] To establish a *prima facie* case of unlawful retaliation, a plaintiff must show that: (1) the plaintiff participated in an activity protected by Title VII; (2) the employer took an adverse employment action against the plaintiff; and (3) a causal connection exists

---

[84]    *Id*. at 328-29.

[85]    *Id*. at 328 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). *See Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) ("mere utterance of an epithet which engenders offensive feelings in a employee does not sufficiently affect the conditions of employment to implicate Title VII" (internal citation, quotation marks, and alteration omitted)).

[86]    42 U.S.C. § 2000e-3.

between the protected activity and the materially adverse action.[87]   If plaintiff

establishes a *prima facie* case, the employer must articulate a legitimate,

nondiscriminatory reason for its employment action.  Once the employer does so, the

burden shifts back to the plaintiff to demonstrate that the Defendant actually was

motivated by retaliation.[88]

As stated above, the parties agree that Dhillon filed two EEOC complaints that

are relevant to this lawsuit, one in 2006 and the second in 2007.  This satisfies the first

*prima facie* element.

Dhillon next must demonstrate that Defendant took an adverse employment

action against her.  In the retaliation context, "a plaintiff must show that a reasonable

employee would have found the challenged action materially adverse."[89]  This requires

a showing that the challenged conduct "might well have dissuaded a reasonable

worker from making or supporting a charge of discrimination."[90]

Plaintiff alleges multiple incidents in support of her retaliation claim.  These are

set forth in detail in the Background section above, but can be summarized here as

---

[87]     *Stewart*, 586 F.3d at 331;  *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008).

[88]     *Aryain*, 534 F.3d at 484.

[89]     *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

[90]     *McCoy*, 492 F.3d at 559 (internal quotation marks omitted) (citing *White*, 548 U.S. 53).  *See Stewart*, 586 F.3d at 33.

follows:  loud reprimands from Helaire in front of co-workers; Helaire's refusal to give her an overtime form when requested; threats from co-worker Johnson regarding using his name or filing an EEOC complaint; having an alleged known sexual harasser sent to inspect her route; receiving a seven-day suspension after returning to the station prematurely because of her belief that the inspector was a known sexual harasser; routinely having her overtime request disapproved when she was expected to complete a purported twelve-hour route in eight hours; the delay (between September 8 and October 25, 2006) in her meeting with her EEO representative; her co-workers' reference to "KK," interpreted as "Ku Klux Klan"; being followed by her supervisors on her mail route; and having a supervisor open and place her hand inside Dhillon's lunch cooler.  Most of these incidents are "petty slights, minor annoyances, and simple lack of good manners" that are not actionable retaliatory conduct.[91]  In addition, the alleged seven-day suspension provides no support for Plaintiff's case because she testified at deposition that she never served the suspension and that the warning letter was removed from her personnel file.[92]

---

[91]    *See Stewart*, 586 F.3d at 332 (as a matter of law, certain of plaintiff's allegations were not actionable retaliatory conduct, in particular: plaintiff's personal items were taken from her desk; the locks on plaintiff's office had been changed and she was not allowed to close her office door; plaintiff was "chastised by superiors and ostracized by co-workers").

[92]    Deposition of Mohinder Dhillon (Exhibit 1 to Motion), at 65-68.

However, assuming that some of Dhillon's allegations of retaliatory conduct could rise to the level of material adversity set by the Supreme Court and the Fifth Circuit, Dhillon has failed to provide evidence going to the third prong of the *prima facie* case, which is causation.  Dhillon fails to argue or present evidence that the alleged adverse actions have a causal connection to her protected activity.  Although her briefing makes the conclusory statement that "[a] causal connection exists between the protected activity and the adverse action," she cites to nothing in the record to supply even slight support for her assertion.[93]  At her deposition, Dhillon was frequently unable to recall when the alleged retaliatory conduct happened,[94] and thus could not connect the alleged retaliation to a particular EEOC complaint. She fails to allege or provide evidence that any *specific* incidents of alleged retaliation were motivated by her complaints to the EEOC.[95]

---

[93]    Response, at 10.

[94]    *See*, *e.g.*, Dhillon Deposition, at 19-20 (Dhillon does not remember date or year that Helaire spoke to her in a loud voice regarding EEOC complaints and refused to give her an overtime form); *id*. at 34-36 (Dhillon unable to recall when incident regarding her lunch cooler occurred, stating only that it was "in the record" of her EEOC complaints).

[95]    *See Am. Eagle Airlines*, 343 F.3d at 405 (nonmoving party on summary judgment must present "specific facts" that show "the existence of a genuine issue concerning every essential component of its case" (internal citation and quotation marks omitted)).

Because Dhillon has failed to demonstrate a genuine issue of material fact as to the *prima facie* elements of her retaliation claim, summary judgment is granted for Defendant on Plaintiff's retaliation claim.

## IV.   CONCLUSION

For all of the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc.  # 21] is **GRANTED**.  All pending claims are dismissed with prejudice.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **14th** day of **September, 2010**.